```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
DORU TSAGANEA,                        :    06 Civ. 15366 (DAB)(JCF)
                                      :
          Plaintiff,                  :    MEMORANDUM
                                      :    AND  ORDER
     - against -                      :
                                      :
THE CITY UNIVERSITY OF NEW YORK,      :
and BARUCH COLLEGE                    :
                                      :
          Defendants.                 :
- - - - - - - - - - - - - - - - - - -:
```

Doru Tsaganea brings this employment discrimination action pro se pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 et seq., and the New York Human Rights Law, N.Y. Exec. Law § 296, alleging that Baruch College, a senior college of the City University of New York ("CUNY"), discriminated against him in employment on the basis of his national origin, religion, and age. CUNY now moves pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the action for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion is denied without prejudice pending further development of the factual record.

Background

Doru Tsaganea was born in Romania in 1946 to Greek and Armenian parents. (Amended Complaint dated April 22, 2003 ("First

SDHR Complaint"), attached as Exh. 1 to Compl., ¶ 1).[1]  He emigrated to the United States in 1984, and is a naturalized U.S. citizen.  (Affidavit/Affirmation in Opposition to Defendants' Motion to Dismiss the Complaint dated July 2, 2007 ("Tsaganea Aff.") at 5, 8).[2]  Dr. Tsaganea holds doctoral degrees in Political Science and Economics.  (Compl. at 4).  At the time this dispute arose, he was a  Substitute Assistant Professor in the Political Science Department of Baruch College, a position which he had held since September 2002.  (First SDHR Compl., ¶¶ 2-3).  Prior to assuming that position, Dr. Tsaganea was an Adjunct Assistant Professor at Baruch for four years, from January 1998 until May 2002.  (First SDHR Compl., ¶ 3).  In December 2002, he applied for an advertised opening as a tenure-track Assistant Professor in the Political Science Department.  (First SDHR Compl., ¶ 4).  He was not interviewed for the position.  (First SDHR Compl., ¶ 6).[3]

Feeling that he had been passed over for consideration because

---

[1] Exhibits attached to the Complaint in fact appear to be numbered as exhibits to a letter of Doru Tsaganea dated Sept. 8, 2006, which is itself an attachment to the Complaint.

[2] Though the document submitted by Dr. Tsaganea does not appear to be a sworn statement, I will treat it as an affidavit.

[3] The position was ultimately offered to another candidate, Dr. Norrin Ripsman, who declined.  (Letter of Doru Tsaganea to Herbert J. Hershkowitz dated July 10, 2006 ("Tsaganea 7/10/06 Letter"), attached as Exh. 4 to Compl., at 9).  As a result, the search was closed in May 2003.  (Tsaganea 7/10/06 Letter at 9).  It was re-opened in the fall of 2003 and Dr. Dov Waxman was hired in 2004.  (Tsaganea Letter 7/10/06 Letter at 9).

of his religion,[4] national origin, and age, Dr. Tsaganea complained to the CUNY Chancellor and to his union representative in February 2003. (First SDHR Compl., ¶ 9). In March 2003, the chair of the Political Science Department wrote to Dr. Tsaganea stating that because the Department would not "be needing many [International Relations] adjuncts," it would not be "using his services" that fall. (Note of Professor Thomas Halper, attached as Exh. 2 to Tsaganea Aff). In May 2003, in light of CUNY's failure to fill the open tenure-track position, the plaintiff applied to be re-appointed to his former position as a Substitute Assistant Professor, but the Department hired someone else to fill the position.[5] (Tsaganea 7/10/06 Letter at 9-10).

Dr. Tsaganea filed a complaint with the New York State Division of Human Rights (the "SDHR") on April 8, 2003, alleging that Baruch College discriminated against him on the basis of his national origin and age when he was denied an interview for the

---

[4] Throughout his papers, Dr. Tsaganea uses the word "creed" to describe the basis of CUNY's alleged discrimination, by which he seems at various times to mean both religious and political beliefs. He suggests that his views on foreign policy, specifically his support of U.S. foreign policy under President Reagan, was a source of resentment among some of the Baruch College faculty. (Tsaganea Aff. at 9). Because claims of discrimination based on political belief are not actionable under Title VII, I will treat his claim only insofar as it is based on religion. (Compl. at 3).

[5] Sometime that spring, the plaintiff was offered a position as an adjunct assistant professor teaching one course during the fall 2003 semester, but he turned it down. (Tsaganea 7/10/06 Letter at 10).

full-time professor position. (Complaint dated April 8, 2003, attached as Exh. A to Affirmation of Clement J. Colucci dated May 31, 2007 ("Colucci Aff."")).[6] He amended the complaint on April 22, adding a claim for discrimination on the basis of religion. (First SDHR Compl., ¶¶ 8, 10). On July 20, 2005, the SDHR determined, after an investigation, that there was no probable cause to believe that the defendants had discriminated against Dr. Tsaganea. (Determination and Order After Investigation dated July 20, 2005 ("First SDHR Determination"), attached as Exh. 3 to Compl., at 1). The SDHR reviewed the evidence and determined that CUNY had "articulated legitimate, non-discriminatory academic and business reasons" for declining to interview the plaintiff. (First SDHR Determination at 3). The EEOC apparently adopted the SDHR's findings and issued a Dismissal and Notice of Rights (commonly known as a "right-to-sue letter") on November 9, 2005, though they cannot now locate the file or produce evidence that they notified the plaintiff. (Affidavit of Holly M. Woodyard dated May 30, 2007 ("Woodyard Aff."), attached as Exh. C to Collucci Aff.).

The plaintiff filed a second complaint with the SDHR on October 7, 2003, claiming that CUNY had refused to renew his

---

[6] The complaint was referred by the SDHR to the Equal Employment Opportunity Commission (the "EEOC"), which deferred its investigation until after the SDHR completed its work. (EEOC Notice of Charge of Discrimination, attached as Exh. B to Colucci Aff.). It is not clear whether Dr. Tsaganea ever received notice that his complaint had been referred to the EEOC. (Tsaganea Aff. at 3).

contract in retaliation for the filing of his initial SDHR complaint and for his "having opposed discrimination." (Complaint dated Oct. 7, 2003 ("Second SDHR Compl."), attached as Exh. 2 to Compl., ¶¶ 4-5). After a second investigation, the SDHR determined that there was probable cause to believe that discrimination had occurred and recommended a public hearing. (Determination After Investigation dated Nov. 29, 2005, attached as Exh. 5 to Compl.). However, six months later, on June 13, 2006, the SDHR wrote to the parties informing them that the SDHR was, "on its own motion," reopening the previous finding of probable cause. (Letter of Herbert J. Herskowitz dated June 13, 2006, attached as Exh. 6 to Compl.). On August 14, 2006, a senior attorney of the SDHR issued a memorandum finding that the previous determination of probable cause should be vacated because "basic res judicata principles" dictated that Dr. Tsaganea not be allowed to challenge the determination denying his first complaint by filing a second. (Memorandum from Herbert J. Herskowitz to Gina M. Lopez Summa dated Aug. 14, 2006, attached as part of Exh. 7 to Compl.). As a result, Dr. Tsaganea's second SDHR complaint was dismissed on August 25, 2006. (Determination and Order of Dismissal dated Aug. 25, 2006, attached as Exh. 8 to Compl.). The EEOC adopted the SDHR's determination and issued a right-to-sue letter on September 21, 2006. (Dismissal and Notice of Rights dated Sept. 21, 2006, attached to Compl.). Dr. Tsaganea then filed the instant action on

December 21, 2006.

Discussion

The plaintiff alleges that the defendants refused to interview him for the open tenure-track professorship because of his religion, national origin, and age.  He further alleges that CUNY refused to continue his employment as a substitute assistant professor in retaliation for his having complained both formally and informally about being passed over for the professorship.  The defendants argue that the plaintiff's claims of discrimination on the basis of age, national origin, and religion should be dismissed as untimely.  (Memorandum in Support of Defendants' Motion to Dismiss the Complaint ("Def. Memo.") at 6).  In addition, they contend that his claim under the ADEA should be dismissed because it is barred by the 11th Amendment.  (Def. Memo. at 6).  Finally, they argue that the plaintiff fails to state a claim for relief for retaliation because the alleged retaliatory conduct occurred prior to the filing of his SDHR complaint.  (Def. Memo. at 8).

    A.   Standard for a Motion to Dismiss

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff.  Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam); Freedom Holdings, Holdings, Inc. V. Spitzer, 363 F.3d 149, 151 (2d Cir. 2004).  The same is true for a motion to challenge subject matter

jurisdiction pursuant to Rule 12(b)(1).  See Natural Resources Defense Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006). However, on a Rule 12(b)(1) motion, the court also has the authority to consider matters outside the pleadings, including affidavits, documents, and testimony if necessary.  See Kamen v. American Telephone & Telegraph Co., 791 F.2d 1006 (2d Cir. 1986); Melnitzky v. HSBC Bank USA, No. 06 Civ. 13526, 2007 WL 1159639, at *5 (S.D.N.Y. April 18, 2007); Berwick v. New York Network International, Ltd., No. 06 Civ. 2641, 2007 WL 949767, at *9 (S.D.N.Y. March 28, 2007).

A complaint may not be dismissed for failure to state a cause of action if it provides the defendant(s) "fair notice of what the [] claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must provide factual allegations adequate to raise a right to relief above the level of speculation; however, the allegations need not be detailed.  Id. at 1955, 1969 (establishing a minimum pleading requirement to replace the "no set of facts" language in Conley, 355 U.S. at 45-46).  The liberal pleading standard applies with even greater force where a plaintiff alleges civil rights violations or proceeds pro se.  Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994); see also Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding pro se complaint to less stringent standard); Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001).

B.  Timeliness

Under both Title VII and the ADEA, a plaintiff may bring suit in federal court only if he has filed a timely complaint with the EEOC and obtained a right-to-sue letter.  See 42 U.S.C. § 2000e-5(e)(1), (f)(1); 29 U.S.C. § 626(d), (e); Holtz v. Rockefeller & Co., 258 F.3d 62, 82-83 (2d Cir. 2001); Shah v. New York State Department of Civil Service, 168 F.3d 610, 613 (2d Cir. 1999).  "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court."  Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001) (quoting Francis v. City of New York, 235 F.3d 763, 768 (2d Cir.2000)); see also Malarkey v. Texaco, Inc., 983 F.2d 1204, 1208 (2d Cir. 1993).  In addition, lawsuits under Title VII and the ADEA must be filed within 90 days of receipt of a right-to-sue letter from the EEOC.  See 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e); Sherlock v. Montefiore Medical Center, 84 F.3d 522, 525 (2d Cir. 1996); Ridgway v. Metropolitan Museum of Art, No. 06 Civ. 5055, 2007 WL 1098737, at *3 n.47 (S.D.N.Y. April 10, 2007).

Here, the defendants claim that a right-to-sue letter concerning Dr. Tsaganea's first EEOC complaint was issued on November 9, 2005, more than 13 months before he filed suit, and that his suit is therefore time-barred to the extent that it is based on the claims addressed by that letter.  (Def. Memo. at 6;

Woodyard Aff., ¶ 3). However, neither they nor the EEOC are able to produce a copy of the letter, nor indeed any documentation that it was sent, let alone received.[7] The EEOC employee who investigated the plaintiff's case says that she has "access to computerized records" of the case but that it is "not possible to print out the computer screen on which the entry [regarding the right-to-sue letter] appears." (Woodyard Aff., ¶¶ 2-3).

Dr. Tsaganea, for his part, appears to contend that he never received the right-to-sue letter.[8] (Tsaganea Aff. at 5). Since the 90 day time-limit runs from receipt of the letter, rather than from mailing, his claims would not be time-barred if Dr. Tsaganea can establish that he never received the letter from the EEOC. On the factual record here, it is impossible to say whether he in fact received the right-to-sue letter.

Because this issue goes to the question of subject matter jurisdiction, it would most appropriately be resolved through some minimal development of the facts: if the EEOC has computerized

---

[7] While it is usually presumed that a party will receive a letter within three days of its mailing, see Fed. R. Civ. P. 6(e); Sherlock, 84 F.3d at 526, here there is no proof of mailing either.

[8] The defendants point out that Dr. Tsaganea never explicitly says that he did not receive the letter. (Reply Memorandum in Further Support of Defendants' Motion to Dismiss the Complaint at 3). However, it may be safely presumed from the plaintiff's other contentions -- that the EEOC's affidavit concerning the letter is false and that the defendants' argument concerning time bar "should be rejected because it has not been in any way proved" -- that he is claiming he never received the letter. (Tsaganea Aff. at 5).

records of the investigation of Dr. Tsaganea's case, including a record of the issuance of a right-to-sue letter, one would assume that there must be some way to produce a verifiable record of the fact that the letter was sent (despite the EEOC's somewhat curious contention that there is no way to print a copy of the record entry). Accordingly, it is most appropriate here to deny the defendants' motion to dismiss without prejudice and to set a schedule for the parties to take limited discovery regarding the issue of whether Dr. Tsaganea received a right-to-sue letter regarding his first filed complaint to the EEOC.[9]

Conclusion

For the reasons set forth above, the defendants' motion to dismiss is denied without prejudice. By November 30, 2007, the parties shall complete discovery limited to the issue of the delivery of the November 9, 2005 right-to-sue letter.

SO ORDERED.

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       October 5, 2007

---

[9] As noted above, the defendants have also moved to dismiss the plaintiff's claims of age discrimination and retaliation on grounds that go to the merits of those claims. Those arguments will be addressed when the defendants renew their motion to dismiss.

Copies mailed this date:

Dr. Doru Tsaganea
19 Vermilyea Avenue
Apt. 3B
New York, New York 10034

Clement J. Colucci, Esq.
Assistant Attorney General
120 Broadway
New York, New York 10271