UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
DORU TSANGANEA,                       :   06 Civ. 15366 (DAB)(JCF)
                                      :
              Plaintiff,              :        REPORT AND
                                      :        RECOMMENDATION
       - against -                    :
                                      :
THE CITY UNIVERSITY OF NEW YORK       :
and BARUCH COLLEGE,                   :
                                      :
              Defendants.             :
- - - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE DEBORAH A BATTS, U.S.D.J.:

      Doru Tsaganea brings this employment discrimination action pro
se pursuant to Title VII of the Civil Rights Act of 1964 ("Title
VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in
Employment Act (the "ADEA"), 29 U.S.C. § 621 et seq., and the New
York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296, alleging
that Baruch College, a senior college of the City University of New
York ("CUNY"), discriminated against him on the basis of his
national origin, religion, and age.  CUNY now moves pursuant to
Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure
to dismiss the action for lack of subject matter jurisdiction and
failure to state a claim upon which relief can be granted.  For the
reasons set forth below, I recommend that the motion be granted in
part and denied in part.

<u>Background</u>[1]

　　　Doru Tsaganea was born in Romania in 1946 to Greek and Armenian parents. (Amendment to the Complaint dated April 22, 2003 ("First Admin. Complaint"), attached as Exh. 1 to Compl., ¶ 1).[2] He emigrated to the United States in 1984, and is a naturalized U.S. citizen. (Affidavit/Affirmation in Opposition to Defendants' Motion to Dismiss the Complaint dated July 2, 2007 ("Pl. Reply") at 5, 8). Dr. Tsaganea holds doctoral degrees in Political Science and Economics. (Compl. at 4). At the time this dispute arose, he was a Substitute Assistant Professor in the Political Science Department of Baruch College, a position which he had held since September 2002. (First Admin. Compl., ¶¶ 2-3). Prior to assuming that position, Dr. Tsaganea was an Adjunct Assistant Professor at Baruch for four years, from January 1998 until May 2002. (First Admin. Compl., ¶ 3). In December 2002, he applied for an advertised opening as a tenure-track Assistant Professor in the Political Science Department. (First Admin. Compl., ¶ 4). He was not interviewed for the position. (First Admin. Compl., ¶ 6).[3]

---

[1] The facts of this case are also set forth in <u>Tsaganea v. City University of New York</u>, No. 06 Civ. 15366, 2007 WL 2907280 (S.D.N.Y. Oct. 5, 2007).

[2] Exhibits attached to the Complaint in fact appear to be numbered as exhibits to a letter of Doru Tsaganea dated Sept. 8, 2006, which is itself an attachment to the Complaint.

[3] The position was ultimately offered to another candidate, Dr. Norrin Ripsman, who declined. (Letter of Doru Tsaganea to Herbert J. Hershkowitz dated July 10, 2006 ("Tsaganea 7/10/06

Feeling that he had been passed over for consideration because of his religion,[4] national origin, and age, Dr. Tsaganea complained to the CUNY Chancellor and to his union representative in February 2003. (First Admin. Compl., ¶ 9). In March 2003, the chair of the Political Science Department wrote to Dr. Tsaganea stating that because the Department would not "be needing more [International Relations] adjuncts," it would not be "using his services" that fall. (First Admin. Compl. ¶ 9; Note of Professor Thomas Halper ("Halper Note"), attached as Exh. 2 to Pl. Reply). In May 2003, in light of CUNY's failure to fill the open tenure-track position, the plaintiff applied to be re-appointed to his former position as a Substitute Assistant Professor, but the Department hired someone else to fill that position.[5] (Tsaganea 7/10/06 Letter at 9-10).

---

Letter"), attached as Exh. 4 to Compl., at 9). As a result, the search was closed in May 2003. (Tsaganea 7/10/06 Letter at 9). It was re-opened in the fall of 2003 and Dr. Dov Waxman was hired in 2004. (Tsaganea Letter 7/10/06 Letter at 9).

[4] Throughout his papers, Dr. Tsaganea uses the word "creed" to describe one basis of CUNY's alleged discrimination, by which he seems at various times to mean both religious and political beliefs. He suggests that his views on foreign policy, specifically his support of U.S. foreign policy under President Reagan, was a source of resentment among some of the Baruch College faculty. (Pl. Reply at 9). Because claims of discrimination based on political belief are not actionable under Title VII, I will treat this claim as if it were based solely on religion. (Compl. at 3).

[5] Sometime that spring, the plaintiff was offered a position as an adjunct assistant professor to teach one course during the fall 2003 semester, but he turned it down. (Tsaganea 7/10/06 Letter at 10).

Dr. Tsaganea filed a complaint with the New York State Division of Human Rights (the "SDHR") on April 8, 2003, alleging that Baruch College discriminated against him on the basis of his national origin and age when he was denied an interview for the full-time professor position. (Complaint dated April 8, 2003, attached as Exh. A to Affirmation of Clement J. Colucci dated May 31, 2007 ("Colucci 5/31/07 Aff.")).[6] He amended the administrative complaint on April 22, adding a claim for discrimination on the basis of religion. (First Admin. Compl., ¶¶ 8, 10). On July 20, 2005, the SDHR determined, after an investigation, that there was no probable cause to believe that the defendants had discriminated against Dr. Tsaganea. (Determination and Order After Investigation dated July 20, 2005 ("First Admin. Determination"), attached as Exh. 3 to Compl., at 1). The SDHR reviewed the evidence and determined that CUNY had "articulated legitimate, non-discriminatory academic and business reasons" for declining to interview him. (First Admin. Determination at 3). The EEOC apparently adopted the SDHR's finding of no cause. (Affidavit of Holly M. Woodyard dated March 27, 2008 ("Woodyard 3/27/08 Aff."), attached as Exh. C to Collucci 3/31/08 Aff.; Charge Detail Inquiry,

---

[6] The complaint was referred by the SDHR to the Equal Employment Opportunity Commission (the "EEOC"), which deferred its investigation until after the SDHR completed its work. (EEOC Notice of Charge of Discrimination, dated April 8, 2003, attached as Exh. B to Colucci Aff.). It is not clear whether Dr. Tsaganea ever received notice that his complaint had been referred to the EEOC. (Pl. Reply at 3).

attached as Exh. A to Woodyard 3/27/08 Aff.). The EEOC's computer records show an entry of "Final Action Accepted" on November 9, 2005, which, according to the investigator in the case, indicates that a Dismissal and Notice of Rights (commonly known as a "right-to-sue letter") was issued on that date. (Woodyard 3/27/08 Aff., ¶ 3). However, Dr. Tsaganea claims that he never received the right-to-sue letter. (Pl. Reply at 5; Plaintiff's Responses to Defendant's First Set of Interrogatories and Document Requests dated Dec. 10, 2007 ("Pl. 12/10/07 Disc. Resp."), at 1-2).[7] Unfortunately, the EEOC is not able to locate Dr. Tsaganea's file. (Woodyard 3/27/08 Aff., ¶ 2).

The plaintiff filed a second administrative complaint with the SDHR on October 7, 2003, claiming that CUNY had refused to renew his contract in retaliation for the filing of his initial administrative complaint and for his "having opposed discrimination." (Complaint dated Oct. 7, 2003 ("Second Admin. Compl."), attached as Exh. 2 to Compl., ¶¶ 4-5). After a second investigation, the SDHR determined that there was probable cause to believe that discrimination had occurred and recommended a public hearing. (Determination After Investigation dated Nov. 29, 2005, attached as Exh. 5 to Compl.). However, six months later, on June 13, 2006, the SDHR wrote to the parties informing them that the

---

[7] This document should not be confused with another filed by the plaintiff on November 14, 2007 entitled "Answers to Defendants' First Set of Interrogatories and Document Requests."

SDHR was, "on its own motion," reopening the previous finding of probable cause. (Letter of Herbert J. Herskowitz dated June 13, 2006, attached as Exh. 6 to Compl.). On August 14, 2006, a senior attorney of the SDHR issued a memorandum finding that the previous determination of probable cause should be vacated because "basic res judicata principles" dictated that Dr. Tsaganea not be allowed to challenge the determination denying his first complaint by filing a second. (Memorandum from Herbert J. Herskowitz to Gina M. Lopez Summa dated Aug. 14, 2006, attached as part of Exh. 7 to Compl.). As a result, Dr. Tsaganea's second administrative complaint was dismissed on August 25, 2006. (Determination and Order of Dismissal dated Aug. 25, 2006, attached as Exh. 8 to Compl.). The EEOC adopted the SDHR's determination and issued a right-to-sue letter on September 21, 2006. (Dismissal and Notice of Rights dated Sept. 21, 2006, attached to Compl.).

Dr. Tsaganea then filed the instant action on December 21, 2006. The defendants moved to dismiss on the grounds that, among other things, the plaintiff's claims of discrimination based on age, national origin, and religion were untimely since they were filed more than one year after his receipt of the first right-to-sue letter. On October 5, 2007, I denied the motion to dismiss without prejudice because there was no evidence that a right-to-sue letter had in fact been issued. <u>Tsaganea</u>, 2007 WL 2907280. The defendants have now renewed their motion.

Discussion

The plaintiff alleges that the defendants refused to interview him for the open tenure-track professorship because of his religion, national origin, and age. (Compl., ¶¶ 4, 7 and page 4'). He further alleges that CUNY refused to continue his employment as a substitute assistant professor in retaliation for his having complained both formally and informally about being passed over for the professorship. (Compl. at 4,' 4"). The defendants argue that the plaintiff's claims of discrimination on the basis of age, national origin, and religion should be dismissed as untimely. (Memorandum in Support of Defendants' Motion to Dismiss the Complaint ("Def. Memo.") at 6). In addition, they contend that his claim under the ADEA should be dismissed because it is barred by the 11th Amendment. (Def. Memo. at 8). Finally, they maintain that the plaintiff fails to state a retaliation claim because the alleged retaliatory conduct occurred prior to the filing of his administrative complaint. (Def. Memo. at 9).

A.  Legal Standard

1.  Proper Procedural Vehicle

The defendants have moved under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction. (Def. Memo. at 1). Presumably, the basis for this argument is the plaintiff's alleged failure to comply with the statutory filing period under Title VII,

which is discussed in further detail below.[8]  See 42 U.S.C. §

2000e-5(f)(1); 29 U.S.C. § 626(e); Sherlock v. Montefiore Medical

Center, 84 F.3d 522, 525 (2d Cir. 1996).  The statutory time limits

in Title VII, however, are not jurisdictional predicates, but

merely "limitations periods subject to equitable tolling." Johnson

v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir.

1984); accord, e.g., Williams v. Chertoff, No. 06 CV 3847, 2008 WL

2001897, at *3 (E.D.N.Y. May 8, 2008); Smith v. Local Union 28

Sheet Metal Workers, 877 F. Supp. 165, 172 (S.D.N.Y. 1995).

Consequently, the defendants' motion with regard to timeliness

should properly have been made as a Rule 12(b)(6) motion to dismiss

for failure to state a claim upon which relief can be granted.[9]

See Manley v. New York City Police Department, No. 05 CV 679, 2005

WL 2664220, at *1 (E.D.N.Y. Oct. 19, 2005).

On a Rule 12(b)(1) motion, the court may consider matters

outside the pleadings, including affidavits, documents, and

testimony if necessary.  See Kamen v. American Telephone &

Telegraph Co., 791 F.2d 1006, 1011 (2d Cir. 1986); Melnitzky v.

HSBC Bank USA, No. 06 Civ. 13526, 2007 WL 1159639, at *5 (S.D.N.Y.

_____

[8] The defendants have also moved to dismiss under Rule
12(b)(6), but it seems clear from their papers that the timeliness
issue is raised under Rule 12(b)(1), while their other defenses are
asserted under Rule 12(b)(6).

[9] In a previous opinion in this case, I inadvertently
conformed to the defendants' characterization of their motion as
asserting a jurisdictional defense under Rule 12(b)(1).  Tsaganea,
2007 WL 2907280, at *2, *4.

8

April 18, 2007).  In order to consider matters outside the pleadings under Rule 12(b)(6) or on a motion for judgment on the pleadings under Rule 12(c), however, the motion must be converted into one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d); see Pacitti v. Delta Air Lines, Inc., No. 04 CV 3197, 2008 WL 919634, at *3 (E.D.N.Y. April 3, 2008); Cardona v. Vidal, No. 06 Civ. 13680, 2008 WL 2856455, at *1 (S.D.N.Y. July 24, 2008). Though Rule 12(b)(1) does not expressly provide for conversion of a motion to dismiss into a motion for summary judgment, courts have held that "the outcome should be the same" under both rules.  Petty v. Goord, No. 00 Civ. 803, 2007 WL 724648, at *3-5 (S.D.N.Y. March 5, 2007)(converting 12(b)(1) motion made on non-jurisdictional grounds to summary judgment motion under Rule 56); see also Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 654 (10th Cir. 2002) ("The crucial element is the substance of the motion, not whether it is labeled a Rule 12(b)(1) motion rather than 12(b)(6)."); Fraternal Order of Police, National Labor Council, USPS No. 2 v. United States Postal Service, 988 F. Supp. 701, 704 n.2 (S.D.N.Y. 1997) (finding no prejudice from the conversion of a Rule 12(b)(1) motion into one under Rule 12(b)(6) because plaintiffs had fully briefed whether they had stated claim).

When converting a motion to dismiss to a motion for summary judgment pursuant to Rule 12(d), "[a]ll parties must be given a

reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); see also Krijn v. Poque Simone Real Estate Co., 896 F.2d 687, 689 (2d Cir. 1990) ("The essential inquiry . . . is whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.") (internal quotation marks and citations omitted). Here, the parties had ample notice that facts outside the pleadings would be considered on the issue of timeliness. Both parties (incorrectly) treated the defendants' initial motion to dismiss as addressing the court's jurisdiction, and therefore submitted materials outside the pleadings on the statutory filing period issue. Furthermore, my earlier opinion in this case expressly denied the defendants' motion to dismiss without prejudice so that additional evidence related to the issue of timeliness could be submitted. See Tsaganea, 2007 WL 2907280, at *4. Both parties have taken advantage of that opportunity. Consequently, I will treat the defendants' motion as one for summary judgment and consider the materials that they and the plaintiff have submitted with regard to the timeliness issue. See Petty, 2007 WL 724648, at *5 (holding that where parties had been given opportunity to submit materials outside pleadings with respect to the issue of exhaustion and had in fact done so, they could "claim neither surprise nor

10

prejudice by the conversion of the defendants' Rule 12(b)(1) motion into a motion for summary judgment pursuant to Rule 56").

      2. <u>Summary Judgment Standard</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see also</u> <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir. 2002); <u>Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co.</u>, 189 F.3d 208, 214 (2d Cir. 1999). The moving party bears the initial burden of pointing out "the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The opposing party must then come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Where the non-movant fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. <u>Celotex</u>, 477 U.S. at 322.

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 255 (1986); Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995). However, the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U.S. at 249, and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not sufficiently probative. See id. at 249-50; Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

Where a litigant is pro se, his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, proceeding pro se does not relieve a litigant from the usual requirements of summary judgment, and a pro se party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)); accord Gittens v. Garlocks Sealing Technologies, 19 F. Supp. 2d 104, 110 (W.D.N.Y. 1998).

B.  _Timeliness_

Under both Title VII and the ADEA, a plaintiff may bring suit in federal court only if he has filed a timely complaint with the EEOC and obtained a right-to-sue letter.  _See_ 42 U.S.C. § 2000e-5(e)(1), (f)(1); 29 U.S.C. § 626(d), (e); _Holtz v. Rockefeller & Co._, 258 F.3d 62, 82-83 (2d Cir. 2001); _Shah v. New York State Department of Civil Service_, 168 F.3d 610, 613 (2d Cir. 1999).  "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court."  _Legnani v. Alitalia Linee Aeree Italiane, S.P.A._, 274 F.3d 683, 686 (2d Cir. 2001) (quoting _Francis v. City of New York_, 235 F.3d 763, 768 (2d Cir. 2000)); _see also Malarkey v. Texaco, Inc._, 983 F.2d 1204, 1208 (2d Cir. 1993).

Lawsuits under Title VII and the ADEA must be filed within 90 days of receipt of a right-to-sue letter from the EEOC.  _See_ 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e); _Sherlock_, 84 F.3d at 525; _Ridgway v. Metropolitan Museum of Art_, No. 06 Civ. 5055, 2007 WL 1098737, at *3 n.47 (S.D.N.Y. April 10, 2007).  Failure to commence an action within that time period generally precludes an action in federal court.  _Williams_, 2008 WL 2001897, at *3 (citing _Briones v. Runyon_, 101 F.3d 287, 289-90 (2d Cir. 1996)).  The 90 day time-limit runs from the date on which the claimant actually receives the right-to-sue notice, rather than from the date of

mailing. <u>Chi Ho Lin v. New York City Administration for Children's Services</u>, No. 99 Civ. 10314, 2001 WL 964016, at *3 (S.D.N.Y. Aug. 23, 2001); <u>Gardner v. Honest Weight Food Cooperative, Inc.</u>, 96 F. Supp. 2d 154, 158 (N.D.N.Y. 2000); <u>Casamento v. New York Stock Exchange, Inc.</u>, No. 95 Civ. 0201, 1995 WL 373494, at *2 (S.D.N.Y June 22, 1995); <u>Streeter v. Joint Industry Board of the Electrical Industry</u>, 767 F. Supp. 520, 527 (S.D.N.Y. 1991).

In general, "it may be assumed, in the absence of challenge, that a notice provided by a government agency has been mailed on the date shown on the notice." <u>Sherlock</u>, 84 F.3d at 526. "Where . . . the actual date of the plaintiff's receipt of the right-to-sue letter is unknown or in dispute, the court will presume receipt three days after mailing by the EEOC." <u>Brown v. Commission on Human Rights & Opportunities</u>, No. 3:02 CV 223, 2008 WL 687358, at *3 n.6 (D. Conn. March 10, 2008); <u>see also</u> <u>Baldwin County Welcome Center v. Brown</u>, 466 U.S. 147, 148 n.1 (1984). That presumption, however, is "rebuttable 'by admissible evidence, such as an affidavit by the claimant stating the actual date of receipt (or lack thereof).'" <u>Harrison v. North Shore University Hospital</u>, No. 04 CV 2033, 2008 WL 656674, at *6 (E.D.N.Y. March 6, 2008)(quoting <u>Comrie v. Bronx Lebanon Hospital</u>, 133 F.3d 906 (2d Cir. 1998)); <u>Sherlock</u>, 84 F.3d at 526.

Here, the defendants claim that a right-to-sue letter for Dr. Tsaganea's first EEOC complaint was issued on November 9, 2005,

14

approximately 13 months before he filed suit, and that his action is therefore barred to the extent that it is based on the claims addressed by that letter. (Def. Memo. at 6-8). In support of this contention, they have submitted a computer printout from the EEOC showing the notation "Final Action Accepted" on November 9, 2005 and an affidavit from the EEOC employee who investigated Dr. Tsaganea's claim explaining that such an entry indicates that a right-to-sue notice was sent. They have not, however, been able to produce the right-to-sue letter itself or any proof of mailing.

Dr. Tsaganea states in his responses to the defendants' interrogatories, made under oath, that he never received "any document from the . . . EEOC [] in connection with [this claim]." (Pl. 12/10/07 Disc. Resp. at 1). Rather, he was first apprised of the existence of the notice by the defendants' letter of May 31, 2007. (Pl. Discovery Responses at 2). He says that the only right-to-sue letter he received from the EEOC was in September of 2006 in conjunction with his retaliation claim. (Pl. 12/10/07 Disc. Resp. at 2).[10] Dr. Tsaganea also states that mail is frequently misplaced in the apartment building where he lives. (Plaintiff's Responses to the March 31, 2008 Defendants' Memorandum in Support of Their Motion to Dismiss the Complaint at 6).

---

[10] Dr. Tsaganea has produced a copy of that letter. (Dismissal and Notice of Rights dated 9/21/06, attached as Exh. 2 to Pl. 12/10/07 Disc. Resp.; Compl., ¶ 12).

Given the inability of the EEOC to produce conclusive proof that the right-to-sue notice was in fact mailed in November 2005, Dr. Tsaganea's statement is sufficient to preclude summary judgment. To begin with, since the EEOC cannot produce the notice itself, it is unclear whether the presumptions that a notice was mailed on the date indicated on the notice and that it was received within three days apply in this instance. See Brown, 2008 WL 687358, at *3 n.6.[11] Even were those presumptions to apply, they have been rebutted by the plaintiff's sworn statement that the right-to-sue notice was not timely received. See Ridgway, 2007 WL 1098737, at *5 (finding plaintiff's "sworn complaint" sufficient to rebut presumption that he received right-to-sue letter); Greenidge v. Ben Hur Moving & Storage, Inc., No. 02 CV 1635, 2002 WL 1796812, at *3 (E.D.N.Y. Aug. 6, 2002)("[A]n affidavit by the claimant stating that she never received the right-to-sue letter sent by the EEOC may rebut the presumption of receipt."); Gardner v. Honest Weight Food Cooperative, Inc., 96 F. Supp. 2d 154, 159 (N.D.N.Y 2000)("The sworn affidavit submitted by Plaintiff is sufficient to

_____

[11] The EEOC is usually expected, and able, to provide more definitive proof of mailing, either in the form of a dated right-to-sue letter or a certificate of mailing, or both. See, e.g., Sherlock, 84 F.3d at 526 (fact that there was "no evidence from EEOC itself as to the date on which EEOC mailed the letter" to plaintiff, among other things, created triable issue of fact). Nelson v. Ashcroft, No. 00 Civ. 9485, 2003 WL 22004884, at *2 (S.D.N.Y. Aug. 22, 2003)(noting submission of notice and certificate of mailing); Blackett v. Pathmark Stores, Inc., No. 01 Civ. 6913, 2002 WL 31385817, at *4 & n.6 (S.D.N.Y. Oct. 21, 2002)(same).

create a genuine issue of fact about [when] she received the Right-To-Sue letter."); <u>Pointer v. Columbia University</u>, No. 95 Civ. 8418, 1997 WL 86387, at *3 (S.D.N.Y. Feb. 28, 1997)(presumption of receipt "may be rebutted by the plaintiff's sworn statement indicating that the letter was received later"); <u>cf.</u> <u>Williams</u>, 2008 WL 2001897, at *5-6 (summary judgment for defendant appropriate because, among other reasons, plaintiff's denial of receipt was unsworn and EEOC came forward with certified mail receipt). Consequently, summary judgment with respect to the timeliness of the plaintiff's complaint must be denied at this time.

C. <u>Eleventh Amendment</u>

1. <u>The ADEA</u>

The defendants next argue that Dr. Tsaganea's claim under the ADEA is barred by the Eleventh Amendment. (Def. Memo. at 8). The Eleventh Amendment bars suits against a state for money damages unless the state has waived its immunity or Congress has exercised its power under Section 5 of the Fourteenth Amendment to override that immunity. <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985); <u>see also</u> <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 529-30 (2d Cir. 1993). The Supreme Court has held that the ADEA is "not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment." <u>Kimel v. Florida Board of Regents</u>, 528 U.S. 62, 91 (2000). Therefore, the ADEA does not abrogate sovereign immunity. <u>Id.</u> Accordingly, unconsenting state entities may not be sued under

17

the ADEA.  Since the Second Circuit has held that senior colleges of CUNY are "arms of the state" immune from suit under the Eleventh Amendment, <u>Clissuras v. City University of New York</u>, 359 F.3d 79, 83 (2d Cir. 2004), and Baruch College is a senior college of CUNY, <u>see</u> N.Y. Educ. Law § 6202(5), Baruch College is immune from suit under the ADEA and the plaintiff's claims under that statute should be dismissed.

## 2. <u>New York Human Rights Law</u>

The defendant further argues that any age discrimination claims under state law are likewise barred by the Eleventh Amendment.[12]  The Eleventh Amendment protects states against suit in federal court for violations of state law unless the state consents to be sued.  <u>See</u> <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 121 (1984).  In this case, "New York has not consented to suit in federal court through the Human Rights Law." <u>Cajuste v. Lechworth Developmental Disabilities Service</u>, No. 03 Civ. 0161, 2005 WL 22863, at *3 (S.D.N.Y. Jan. 5, 2005)(collecting cases); <u>accord, e.g.,</u> <u>Duch v. Kohn</u>, No. 04 Civ.

---

[12] The Complaint in this case does not itself cite the New York Human Rights Laws.  However, both the plaintiff's SDHR complaint and his complaint to the EEOC, which are attached to the Complaint, invoke New York Executive Law § 296 prohibiting age discrimination. (First Admin. Complaint, ¶ 10; Letter of Doru Tsaganea dated Sept. 8, 2006, attached to Compl., at 1).  The defendants therefore treat the plaintiff as raising claims under state law (Def. Memo. at 8-9), and I will address the plaintiff's claims under state law as well.

109, 2007 WL 2230174, at *4 (S.D.N.Y. Aug. 3, 2007); <u>Rolle v. New York State Liquor Authority</u>, No. 05 Civ. 3536, 2006 WL 2254807, at *4 (S.D.N.Y. Aug. 7, 2006); <u>Jungels v. State University College of New York</u>, 922 F. Supp. 779, 784 (W.D.N.Y. 1996); <u>Moche v. City University of New York</u>, 781 F. Supp. 160, 165 (E.D.N.Y. 1992). The plaintiff's claims under the NYHRL must therefore be dismissed.

D. <u>Retaliation Claim</u>

⎯⎯⎯⎯Finally, the defendants argue that Dr. Tsaganea's retaliation claim must be dismissed because the adverse action on which the claim is based occurred prior to his filing a complaint with the SDHR. (Def. Memo. at 9-11).

Section 704(a) of Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. 2000e-3(a). Thus, a plaintiff must set forth

> evidence sufficient to permit a rational trier of fact to find [1] that she "engaged in protected participation or opposition under Title VII, [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e. that a retaliatory motive played a part in the adverse employment action."

<u>Cifra v. General Electric Co.</u>, 252 F.3d 205, 216 (2d Cir. 2001) (quoting <u>Sumner v. United States Postal Service</u>, 899 F.2d 203, 208-

09 (2d Cir. 1990)).

Here, the plaintiff alleges that his contract to teach at Baruch College was not renewed because he complained about being passed over for a tenure-track position. There seems to be no dispute that declining to renew Dr. Tsaganea's contract could constitute an adverse action under Title VII. <u>See</u> <u>Burlington</u> <u>Northern & Santa Fe Railway Co. v. White</u>, 548 U.S. 53, 57 (2006)(adverse action is one that would be "materially adverse to a reasonable employee or job applicant").[13] But the defendants note that the plaintiff filed his first complaint with the SDHR on April 8, 2003, more than a month after he was informed by the head of the department that his contract would not be renewed. (Def. Memo. at 9). In that case, Mr. Tsaganea clearly could not have been terminated in retaliation for filing the complaint. <u>See, e.g.,</u> <u>Pinero v. Long Island State Veterans Home</u>, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) ("There can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity."); <u>Williams v. City of New York</u>, No. 04 Civ. 1993, 2005 WL 839103, at *12 (S.D.N.Y. April 12, 2005) (dismissing retaliation claim when protected activity occurred after termination).

However, Dr. Tsaganea alleges that he wrote a letter to CUNY

_____

[13] The defendants also agree that the plaintiff's filing of the initial and amended administrative complaints constitute protected activity under Title VII. (Def. Memo. at 9 n.5).

Chancellor Matthew Goldstein and complained to his union in February 2003, a month before he was told his services were not needed for the upcoming year. (First Admin. Complaint, ¶ 9). These actions could qualify as "protected participation or opposition under Title VII." <u>Cifra</u>, 252 F.3d at 216.[14] To demonstrate that he has engaged in protected activity, a plaintiff need only have "taken, or threatened to take, some action to protest or oppose illegal discrimination. <u>Correa v. Mana Products</u>, 550 F. Supp. 2d 319, 327 (E.D.N.Y. 2008). Such action can include "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." <u>Sumner</u>, 899 F.2d at 209; <u>see also</u> <u>Grant v.</u>

---

[14] Whether the plaintiff's letter in fact qualifies as protected activity depends in part on whether it alleged discrimination. <u>See</u> <u>Shan v. New York City Department of Health & Mental Hygiene</u>, No. 05 Civ. 3245, 2007 WL 2746891, at *6 (S.D.N.Y. Sept. 19, 2007)("lengthy email" complaining of unfair treatment but not referring to discrimination did not qualify as protected activity); <u>Turner v. Davidson/Gilmour Pipe Supply</u>, No. 04 CV 3278, 2006 WL 1652613, at *9 (E.D.N.Y. June 14, 2006) (finding that union grievance that failed to allege discrimination was not protected activity); <u>Carrion v. Local 32B-32J Service Employees International Union, AFL-CIO</u>, No. 03 Civ. 1896, 2005 WL 659321, at *15 (S.D.N.Y. March 21, 2005) (same). Dr. Tsaganea's complaint does not specify whether the letter specifically complained of discrimination; he says only that the letter "explain[ed] my case." (First Admin. Complaint, ¶ 9). However, drawing all inferences in favor of the plaintiff, as is required at this stage, I will assume that the explanation of his case referred to the alleged discrimination against him.

Hazelett Strip-Casting Corp., 880 F.2d 1564, 1569 (2d Cir.
1989)(noting that Title VII "sought to protect a wide range of
activity in addition to the filing of a formal complaint" and
citing examples, including writing letters, boycotting store, and
making public statements regarding discrimination). Moreover, "[a]
finding of unlawful retaliatory discharge is not dependent on the
merits or validity of the underlying claim." Correa, 550 F. Supp.
2d at 327. Rather, in order to claim protection, the plaintiff
must merely demonstrate that he had a "good faith, reasonable
belief that the underlying challenged actions of the employer
violated the law." McMenemy v. City of Rochester, 241 F.3d 279,
283 (2d Cir. 2001) (quoting Manoharan v. Columbia University
College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir.
1988)). The plaintiff's allegations are thus sufficient to state
a claim for retaliation and the defendants' motion should be
denied.[15]

---

[15] Dr. Tsaganea also argues that the note from Dr. Halper
referred to a different position than the one from which he was
terminated. He points out that the note said that the department
would not "be needing more [International Relations] adjuncts," not
substitute assistant professors. (Halper Note; Pl. Reply at 2).
The adjunct professor position was the only one open at that point
because Baruch College was in the process of hiring Norrin Ripsman
as a full-time tenured professor in part to teach the classes that
had previously been covered by Dr. Tsaganea's former position. In
May 2003, after he found out that Dr. Ripsman had declined the
professorship, Dr. Tsaganea claims that he asked to be continued in
his previous position as a substitute assistant professor. (Pl.
Reply at 2-3). He says that it was from this position that he was
effectively fired when Baruch College declined to renew his
contract. The defendants do not address this point in their motion

papers.  The extent to which the two positions are in fact distinct and the intent of Dr. Halper in writing the note are unclear from the record before the Court; further development of the record is thus appropriate.

Conclusion

For the reasons set forth above, the defendants' motion to dismiss the plaintiff's age discrimination claims under the ADEA and NYHRL should be granted. In all other respects, the motion should be denied without prejudice to being renewed after discovery has been taken. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Deborah A. Batts, Room 2510, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       August 28, 2008

---

papers. The extent to which the two positions are in fact distinct and the intent of Dr. Halper in writing the note are unclear from the record before the Court; further development of the record is thus appropriate.

23

Copies mailed this date:

Dr. Doru Tsaganea
19 Vermilyea Avenue
Apt. 3B
New York, NY 10034

Clement J. Colucci, Esq.
Assistant Attorney General
120 Broadway
New York, NY 10271

24